FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 08, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIA A.,<br><br>                    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                    Defendant. | NO:  1:19-CV-3062-FVS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment.
ECF Nos. 11, 12.  This matter was submitted for consideration without oral
argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security
Administration.  Accordingly, the Court substitutes Andrew M. Saul as the Defendant
and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P. 25(d).

represented by Special Assistant United States Attorney Joseph J. Langkamer.  The

Court, having reviewed the administrative record and the parties' briefing, is fully

informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 11, is

granted and Defendant's Motion, ECF No. 12, is denied.

## JURISDICTION

Plaintiff Maria A.[2] (Plaintiff), filed for disability insurance benefits (DIB) on

July 13, 2015, alleging an onset date of February 24, 2014.  Tr. 189-95.  Benefits

were denied initially, Tr. 98-100, and upon reconsideration, Tr. 104-08.  Plaintiff

appeared at a hearing before an administrative law judge (ALJ) on August 7, 2017.

Tr. 47-67.  On March 14, 2018, the ALJ issued an unfavorable decision, Tr. 22-39,

and on February 8, 2019, the Appeals Council denied review.  Tr. 1-9.  The matter is

now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts,

the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are

therefore only summarized here.

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first

name and last initial, and, subsequently, Plaintiff's first name only, throughout this

decision.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

Plaintiff was 50 years old at the time of the hearing.  Tr. 54.  She went to school through the fourth grade in Mexico.  Tr. 54.  She has work experience as a meat cutter in a processing plant, day care provider, and fast food worker.  Tr. 54-55.  She testified she stopped working because she developed a hand condition.  Tr. 55.  She started dropping things and felt a burning sensation in her hands.  Tr. 56.  Her hands were painful and interfered with her ability to sleep.  Tr. 56.  Her hands lost strength and things would fall out of them.  Tr. 57.  Plaintiff testified that she had an operation for left De Quervain's tenosynovitis, [3] but her hands got worse.  Tr. 57.  Her pain goes from the thumb and first finger of each hand all the way to her elbow.  Tr. 58.  According to Plaintiff, physical therapy did not help.  Tr. 57-58.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

---

[3] De Quervain's tenosynovitis is a condition affecting the tendons on the thumb side of the wrist and can cause pain with turning, grasping, or making a fist.  *See* www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/symptoms-causes/syc-20371332.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or

1    mental impairment which can be expected to result in death or which has lasted or

2    can be expected to last for a continuous period of not less than twelve months." 42

3    U.S.C. §§ 423(d)(1)(A).  Second, the claimant's impairment must be "of such

4    severity that he is not only unable to do his previous work[,] but cannot, considering

5    his age, education, and work experience, engage in any other kind of substantial

6    gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

7        The Commissioner has established a five-step sequential analysis to determine

8    whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-

9    (v).  At step one, the Commissioner considers the claimant's work activity.  20

10   C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful

11   activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §

12   404.1520(b).

13       If the claimant is not engaged in substantial gainful activity, the analysis

14   proceeds to step two.  At this step, the Commissioner considers the severity of the

15   claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from

16   "any impairment or combination of impairments which significantly limits [his or

17   her] physical or mental ability to do basic work activities," the analysis proceeds to

18   step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy

19   this severity threshold, however, the Commissioner must find that the claimant is not

20   disabled.  20 C.F.R. § 404.1520(c).

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the

Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from February 24, 2014, the alleged onset date, through September 30, 2016, her date last insured. Tr. 25. At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: bilateral tenosynovitis; left-sided lateral epicondylitis; uterine prolapse; a large cystocele cervix; major depressive disorder; and somatoform disorder. Tr. 25. At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 26.

The ALJ then found that, through the date last insured, Plaintiff had the residual functional capacity to perform light work with the following additional limitations:

> She could lift and/or carry up to twenty pounds occasionally and ten pounds frequently.  She retained the ability to sit, stand, or walk for six hours in an eight-hour workday.  She could have frequently pushed and pulled, within the weight tolerances defined above.  She was able to occasionally climb ramps, climb stairs, balance, stoop, bend, squat, kneel, and crouch.  She could never crawl or climb ladders, ropes, or scaffolds.  She could never be exposed to heavy vibration.  She retained the ability to frequently handle and finger with her upper extremities, bilaterally.  She was able to perform work that involved only occasional interaction with supervisors, co-workers, and the general public.  She was unable to perform production paced or assembly line work.

Tr. 28.

At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work.  Tr. 37.   At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed such as housekeeper, laboratory sample carrier, or cleaner.  Tr. 37-38.  Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from February 24, 2014, the alleged onset date, through September 30, 2016, the date last insured.  Tr. 39.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act.  ECF No. 11. Plaintiff raises the following issues for review:

1.    Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.    Whether the ALJ properly considered the medical opinion evidence;

3.    Whether the ALJ properly considered lay witness statements; and

4.    Whether the ALJ made a proper step three finding.

ECF No. 11 at 2.

**DISCUSSION**

**A.    Symptom Claims**

Plaintiff contends the ALJ improperly rejected her symptom claims.  ECF No. 11 at 5-16.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d a947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found the objective findings did not substantiate Plaintiff's statements regarding the subjective symptoms she experienced from her musculoskeletal impairments. Tr. 30. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ noted that Plaintiff reported severe weakness throughout both hands, but there was no evidence of thenar or intrinsic atrophy and strength findings on exam were generally 5/5 for both upper extremities. Tr. 30, 328, 395, 420, 449. After surgery for De Quervain's tenosynovitis in February 2014, Plaintiff attended physical therapy and although she reported no relief from her symptoms, exam notes showed improvement. Tr. 30, 304-05 ("significant improvements in range of motion"), 310-11, 314. By June 2014, she had full range of motion in all four fingers, and remaining tenderness was described as "minimal" or "mild," and there was no evidence of swelling, edema, or atrophy. Tr. 30, 318. While she demonstrated diminished sensation, the pattern was described as non-dermatomal

and non-orthopedic.  Tr. 30, 318, 357.  A nerve conduction study in January 2015

was normal, and an x-ray of Plaintiff's left hand and a rheumatoid panel were

negative.  Tr. 30, 320-22, 388, 448.  These findings reasonably support the ALJ's

conclusion that Plaintiff's hand and musculoskeletal problems are not supported by

the objective evidence.

However, Plaintiff argues her somatoform disorder explains any pain that

exceeds the physical findings.  ECF No. 11 at 16.  In January 2015, examining

psychiatrist Michael K. Friedman, D.O., diagnosed adjustment disorder with

depressed mood and somatic symptom disorder with predominant pain, persistent

type.  Tr. 342.  Somatic symptom and related disorders involve a persistent course of

symptoms over a long duration that are commonly encountered in primary care

rather than psychiatric settings.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF

MENTAL DISORDERS, 311 (Am. Psychiatric Ass'n 5th ed.) (2013).  Somatic disorders

are characterized by "physical symptoms or deficits that are not intentionally

produced or feigned, and that, following clinical investigation, cannot be fully

explained by a general medical condition, another mental disorder, the direct

effects of a substance, or a culturally sanctioned behavior or experience."  20

C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00B6(a).  The ALJ found somatoform disorder

is a severe impairment at step two.  Tr. 25.  The ALJ considered listing 12.07 for

somatic symptom and related disorders at step three but did not otherwise analyze or

mention the impact of somatic symptom disorder at step four.  Tr. 26.  Because

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

somatic symptom disorder could account for the lack of objective support for Plaintiff's symptoms and because the ALJ failed to address that possibility, the lack of objective evidence is not a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's symptom claims.

The ALJ also found that Plaintiff's mental impairments are not as severe as alleged based on the objective evidence. Tr. 32. The ALJ observed that exam notes generally failed to reveal significant abnormal findings other than a depressed mood and a blunted, tearful affect. Tr. 32. In January 2015, Michael K. Friedman, D.O., conducted a psychiatric examination and found Plaintiff had normal speech, good judgment, intact memory, and insight, with no evidence of cognitive deficit, delusions, illusions, or formal thought disorder. Tr. 32, 341. In September 2015, Greg D. Sawyer, M.D., Ph.D., examined Plaintiff and found Plaintiff was cooperative, able to concentrate throughout the entire examination, and had intact recent and remote memory, although her immediate memory was impaired. Tr. 32, 373-74. These findings reasonably support the ALJ's conclusion that Plaintiff's mental impairment is not as severe as alleged.

Second, the ALJ found Plaintiff's De Quervain's tenosynovitis improved with treatment. Tr. 30. As noted *supra*, after Plaintiff's February 2014 surgery, in April 2014 Dr. Thompson found Plaintiff had "not yet demonstrated improvement" and referred Plaintiff physical therapy. Tr. 311, 314. Her April 2014 physical therapy treatment plan had goals of reducing pain from 7/10 to 3/10 and to increase range of

1   motion in all directions.  Tr. 305.  The May 2014 physical therapy discharge note

2   indicated significant improvement in range of motion with improving but still

3   limited grip strength and overall "decent progress," and Plaintiff was instructed to

4   continue her home exercises.  Tr. 30, 304.  In June 2014, she complained of pain and

5   numbness, but she had full range of motion in all four fingers and her remaining

6   tenderness was described as "minimal" or "mild." Tr. 30, 318.  There was no

7   evidence of swelling, edema, or atrophy.  Tr. 30, 318.  She had symptoms consistent

8   with carpal tunnel syndrome, so Dr. Thompson ordered a nerve conduction study

9   which was normal.  Tr. 319-21.

10          Notwithstanding, because the ALJ failed to consider the impact of Plaintiff's

11   somatic symptom disorder, her improvement with treatment is not a convincing

12   reason for rejecting her symptom claims.  Plaintiff's somatic symptom disorder may

13   account for her alleged symptoms in spite of any improvement with treatment.  This

14   is not a legally sufficient reason without additional analysis of Plaintiff's somatic

15   symptom disorder.

16          Third, the ALJ found Plaintiff was not completely compliant with treatment

17   recommendations.  Tr. 30.  It is well-established that unexplained non-compliance

18   with treatment reflects on a claimant's credibility.  *See Molina*, 674 F.3d at 1113-14;

19   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d

20   625, 638 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996); *Fair*,

21   885 F.2d at 603-04.  A claimant will be found not disabled if he or she fails to follow

prescribed treatment without a good reason.  20 C.F.R. § 404.1530.   In June 2014,

Plaintiff's treating physician recommended she wear splints at night and provided

her with splints.  Tr. 30, 319.  The ALJ noted that in July 2016, Plaintiff told another

provider that the splints were not effective, but the provider noted, "she also reveals

she rarely wears it."  Tr. 30, 446.  She also reported that although she attended

physical therapy, she did not perform her home exercises or participate in physical

therapy on a regular basis.  Tr. 30, 446.

Plaintiff contends that she was compliant by attending therapy and wearing a

splint, and that any noncompliance was justified.  ECF No. 11 at 8-9.  Plaintiff notes

she reported in January 2015 that "she has been tried on splints and they really did

not help much," Tr. 326, and in June 2015 that she "is doing  home PT exercises for

the wrist and wearing left wrist brace, but it is not helping," Tr. 412.  ECF No. 11 at

8.  She also testified that she cannot function while wearing splints and self-treats by

limiting activities and icing her hands.  Tr. 59-60.  On remand, the ALJ should

readdress Plaintiff's compliance with treatment and consider any justifications for

noncompliance, taking into account the January and June 2015 records.

Fourth, the ALJ found Plaintiff received conservative treatment despite

allegations of disabling pain.  Tr. 30.  The type, dosage, effectiveness, and side

effects of medication taken to alleviate pain or other symptoms is a relevant factor in

evaluating the intensity and persistence of symptoms.  20 C.F.R. §

404.1529(c)(3)(iv).  The ALJ observed there is no evidence that Plaintiff took or was

prescribed narcotic pain medicine despite her allegations of disabling pain.  Tr. 30.

At the hearing, Plaintiff testified that she took Tylenol and ibuprofen for pain.  Tr.

30, 60.  However, as discussed *supra*, the fact that Plaintiff's symptom claims

exceed the level of treatment may be a symptom of her somatoform disorder.  On

remand, the ALJ should reconsider the relationship between Plaintiff's level of

treatment and her symptom claims in light of her somatic symptom disorder.

Fifth, the ALJ found the record suggests Plaintiff may have been

misrepresenting the severity of her symptoms.  Tr. 31.  An ALJ may reject a

claimant's testimony if there is evidence of a tendency to exaggerate symptoms.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  The ALJ cited the

findings of S. Daniel Seltzer, M.D., an orthopedic surgeon, who was unable to

perform a "meaningful examination" of Plaintiff's upper extremities in July 2014

due to "global pain behavior from the elbows to the fingertips, both left and right."

Tr. 31, 355.  In addition to the accepted orthopedic diagnoses of De Quervain's

radial tenosynovitis and left lateral epicondylitis, Dr. Seltzer diagnosed global pain

behavior, symptom magnification, and profound disability conviction.  Tr. 31, 358.

Dr. Seltzer found there is no anatomical or orthopedic basis for work restrictions.

Tr. 359.  The ALJ noted that at a follow-up exam with Dr. Seltzer in January 2015,

he indicated there were no changes to his diagnoses, and that some exam findings

were "all over the map" and did not correspond to any specific diagnosis.  Tr. 31,

324, 328.  The ALJ concluded Dr. Seltzer's statements suggest Plaintiff's

impairments may not be as severe as alleged and demonstrate that she may be exaggerating her reported symptoms.  Tr. 31.

Plaintiff contends that the ALJ's conclusion "is not even rational" because Dr. Seltzer evaluated Plaintiff in July 2014 and January 2015, but she "did not even apply for disability benefits until July 2015."  ECF No. 11 at 13.  This argument is not well-taken, as Plaintiff's alleged onset date is February 24, 2015, and Dr. Seltzer's exams were conducted well within the alleged period of disability.  The period of consideration for disability purposes begins with the alleged onset.  *See Vertigan v. Halter*, 260 F.3d 1044, 1047 n.1 (9th Cir. 2001); *Swanson v. Sec'y of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985); *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ( "Medical opinions that predate the alleged onset of disability are of limited relevance.").

Plaintiff also contends that her somatic symptom disorder accounts for Dr. Seltzer's findings.  ECF No. 11 at 12.  Defendant argues that Dr. Seltzer was aware of and accounted for Dr. Friedman's finding of somatic symptom disorder in finding that Plaintiff engaged in symptom magnification with profound disability conviction.  ECF No. 12 at 7 (citing Tr. 342).  However, the ALJ found Dr. Friedman's diagnosis of somatic symptom disorder is a severe impairment.  The ALJ failed to address the disorder in discussing Dr. Seltzer's finding or otherwise at step four.  As a result, the exaggeration analysis is incomplete, and this reason is not supported by substantial evidence.

Sixth, the ALJ found Plaintiff's activities of daily living were inconsistent with her subjective complaints.  Tr. 31.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints.  *See Rollins*, 261 F.3d at 857.  However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.  *Fair,* 885 F.2d at 603.  Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.

The ALJ observed that although Plaintiff reported decreased grip strength, she reported driving her child to school every day, remained independent in bathing and dressing, and could perform shopping, cooking, and lighter household chores.  Tr. 31-32, 339, 371-72.  The ALJ acknowledged Plaintiff reported taking numerous breaks throughout the day, Tr. 59, but concluded that her activities of daily living were not limited to the extent expected, given the complaints of disabling symptoms and limitations.  Tr. 31.  In light of the significance of the ALJ's failure to consider Plaintiff's somatic symptom disorder in evaluating Plaintiff's symptom claims, this

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

reason is not sufficiently persuasive.  On remand, the ALJ should reconsider

Plaintiff's symptom claims and discuss the impact of her somatic symptom disorder

on the findings.

**B.    Medical Opinion Evidence**

Plaintiff contends the ALJ failed to properly consider the opinion of Travis A.

Peterson, D.O.  ECF No. 11 at 16-18.  There are three types of physicians: "(1) those

who treat the claimant (treating physicians); (2) those who examine but do not treat

the claimant (examining physicians); and (3) those who neither examine nor treat the

claimant but who review the claimant's file (nonexamining or reviewing

physicians)."  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001)

(brackets omitted).  "Generally, a treating physician's opinion carries more weight

than an examining physician's, and an examining physician's opinion carries more

weight than a reviewing physician's."  *Id*.  "In addition, the regulations give more

weight to opinions that are explained than to those that are not, and to the opinions

of specialists concerning matters relating to their specialty over that of

nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

(internal quotation marks and brackets omitted). "If a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

providing specific and legitimate reasons that are supported by substantial

evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

In February 2014, Dr. Peterson saw Plaintiff for a pre-surgical visit for a left

first dorsal compartment release pursuant to her left De Quervain's tenosynovitis.

Tr. 307. At that appointment Dr. Peterson restricted Plaintiff to no lifting greater

than five pounds with no pushing, pulling, gripping, or grasping, and no work under

heated areas until after surgery. Tr. 308. He also indicated that after surgery,

Plaintiff would be restricted to no use of the left hand for one month with light use

of the right hand and no lifting greater than five pounds. Tr. 308. Surgery was

performed later that month and Dr. Peterson saw Plaintiff at follow up visits in

March, April, May, and June 2014.

In May 2014, Dr. Peterson noted that Plaintiff had experienced a slow

recovery from surgery and that the surgery had not provided the desired relief of

symptoms. Tr. 316. He recommended another month of physical therapy and "in

the meantime," light use of the left hand with no lifting greater than ten pounds and

full use of the right upper extremity. Tr. 316.

The ALJ gave little weight to Dr. Peterson's February 2014 opinion that

Plaintiff was unable to use her left hand for one month. Tr. 33, 308. First, the ALJ

found that the opinion was durational in nature and was made approximately one week before her surgery.  Tr. 33.  Temporary limitations do not meet the durational requirement for a finding of disability.  20 C.F.R. § 404.1505(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physician's short-term excuse from work was not indicative of "claimant's long-term functioning").  Because Dr. Peterson's February 2014 lifting restriction was for one month and involved the period just before and after surgery, the ALJ reasonably assigned it little weight.

Second, the ALJ found the opinion is inconsistent with the medical evidence overall.  Tr. 33-34.  The amount of relevant evidence supporting an opinion and the consistency of a medical opinion with the record as a whole are relevant factors in evaluating a medical opinion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631.  The ALJ noted that Plaintiff's grip strength was 5/5 elsewhere in the record, and Dr. Seltzer found no signs of carpal tunnel syndrome, recommended no treatment, and found that no specific limitation prevented Plaintiff from returning to work.  Tr. 33-34, 322, 328-30, 395, 420, 449.

The ALJ also gave little weight to Dr. Peterson's May 2014 opinion that Plaintiff was limited to lifting no more than ten pounds with her left upper extremity because the restriction is inconsistent with Dr. Peterson's subsequent exam notes. Tr. 34.  An ALJ may discount a medical source's opinion that is inconsistent with the

source's other findings.  *Bayliss,* 427 F.3d at 1216.   The ALJ noted that in June

2014, Dr. Peterson's exam notes do not reveal any significant, abnormal findings

despite Plaintiff's reports of tenderness and stiffness.  Tr. 34, 304, 318.  Dr. Peterson

found "minimal" tenderness over the left first dorsal compartment and "mild"

tenderness over the right first dorsal compartment, and found no swelling, edema, or

atrophy.  Tr. 318.  The ALJ noted that although Dr. Peterson found diminished

sensation to light touch in the median nerve distribution bilaterally and Phalen's

testing was positive bilaterally, the subsequent nerve conduction study did not

confirm any of these findings.  Tr. 34, 318, 320.

Notwithstanding, the ALJ's error in failing to consider Plaintiff's somatic

symptom disorder in evaluating Dr. Peterson's opinions means the evaluation of Dr.

Peterson's opinions is insufficient.  By its nature, somatic symptom disorder could

account for Dr. Peterson's lack of significant findings.  Without further analysis by

the ALJ regarding Plaintiff's somatic symptom disorder, the ALJ's finding is not

supported by substantial evidence.  On remand, the ALJ should reconsider Dr.

Peterson's opinions and should account for and discuss the impact of somatic

symptom disorder on his conclusions.

## C.    Lay Witness Statements

Plaintiff contends the ALJ failed to give proper weight to the statements of

Plaintiff's daughter-in-law, Linda Ramos.  ECF No. 11 at 18-19.  Ms. Ramos

completed a third-party function report in July 2015.  Tr. 218-25.  Ms. Ramos

indicated that Plaintiff's hand problems cause her to drop dishes; she cannot lift heavier items like a chair or laptop; she has difficulty with buttons and turning on a faucet; she can prepare simple meals but it takes a long time; she can do laundry but it takes most of the day and she needs help with ironing and lifting the laundry basket; her hands prevent her from doing yard work; she can shop for groceries and drive; and she is limited in lifting, squatting, kneeling, bending, climbing stairs, memory, completing tasks, and using her hands.  Tr. 218-23.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ.  If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

The ALJ gave little weight to Ms. Ramos' opinion.  Tr. 36.  First, the ALJ found the exam notes and objective findings in the record do not support the statement.  Tr. 36.   As discussed throughout this decision, the lack of supporting objective findings may be related to Plaintiff's somatic symptom disorder which was not adequately addressed by the ALJ.  Thus, this reason is not supported by substantial evidence.

1    Second, the ALJ observed that Ms. Ramos is not an acceptable medical

2    source.  Tr. 36.  As noted *supra*, lay witness testimony must be considered.  *See*

3    *Stout*, 454 F.3d at 1053.  This is not an appropriate reason for discounting the

4    testimony of a lay witness, who, by definition, has no special training or professional

5    skills.  On remand, the ALJ should reevaluate the lay witness statement.

6    **D.    Step Three**

7         Plaintiff contends the ALJ should have found she is disabled under Listing

8    1.02B for major dysfunction of a joint.  ECF No. 11 at 19-20.  At step three of the

9    evaluation process, the ALJ must determine whether a claimant has an impairment

10   or combination of impairments that meets or equals an impairment contained in the

11   listings.  *See* 20 C.F.R. § 404.1520(d).  The listings describe "each of the major body

12   systems impairments [considered] to be severe enough to prevent an individual from

13   doing any gainful activity, regardless of his or her age, education, or work

14   experience."  20 C.F.R. § 404.1525.  An impairment "meets" a listing if it meets all

15   of the specified medical criteria.  *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990);

16   *Tackett,* 180 F.3d at 1098.  An impairment that manifests only some of the criteria,

17   no matter how severely, does not qualify.  *Sullivan,* 493 U.S. at 530; *Tackett,* 180

18   F.3d at 1099.  An unlisted impairment or combination of impairments "equals" a

19   listed impairment if medical findings equal in severity to all of the criteria for the

20   one most similar listed impairment are present.  *Sullivan,* 493 U.S. at 531; *see* 20

21   C.F.R. § 404.1526(b).

Listing 1.02B is characterized by (1) gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of or abnormal motion, with imaging showing joint space narrowing, bony destruction, or ankylosis; and (2) involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in an inability to perform fine and gross movements effectively.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02B.  The inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B(2)(c).  An extreme loss of function means a very serious interference with the ability to independently initiate, sustain, or complete activities.  *Id.*  To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living.  *Id.*  Examples of inability to perform fine and gross movements effectively include the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.  20 C.F.R. Pt. 404, Subpt. P. § 1.00B(2)(c).

The ALJ found Plaintiff maintained the ability to perform fine and gross movements effectively and that Plaintiff's hand impairment does not meet listing 1.02B.  Tr. 26.  As an example, the ALJ noted Plaintiff's is able to drive a motor vehicle.  Tr. 26, 339, 372.  The ALJ also noted no evidence of thenar or intrinsic

atrophy throughout either upper extremity.  Tr. 26, 308.  Plaintiff contends these findings are not relevant to listing 1.02B but does not identify any evidence that she has the extreme loss of function required to meet the listing.  ECF No. 11 at 20.  At step three, the ALJ found Plaintiff "independently maintained her personal care and continued to perform chores." [4]  Tr. 27-28 (citing Tr. 339, 372).  Elsewhere in the decision, the ALJ noted that Plaintiff remained independent in bathing and dressing, and retained the ability to cook, clean, and perform other light chores throughout the day.  Tr. 31-32, 339, 371-72.  Furthermore, driving is reasonably interpreted as a function inconsistent with the "very serious interference with the ability to independently initiate, sustain, or complete activities" indicated by the listing.  These findings reasonably indicate that Plaintiff does not meet the requirements of listing 1.02B and the ALJ's consideration of that listing is legally sufficient.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  On remand, the ALJ should evaluate the impact of Plaintiff's somatic symptom disorder on her symptom testimony, Dr. Peterson's opinions, and the lay

---

[4] All reasons discussed by the ALJ constitute "grounds invoked by the agency," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), or "reasons the ALJ assert[ed]," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26

witness statement, and should make new findings which demonstrate that somatic symptom disorder was adequately considered at step four.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** May 8, 2020.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge